The Honorable and the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable and the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated, please. All right, we'll hear the case of Norfolk Southern, this is Baltimore and Annapolis Railroad, and Mr. Marion, I guess we'll hear from you first. Thank you, Your Honor. Thank you, Marion and Tommy Britton for being a railroad, Your Honor. While we've raised numerous issues in our briefs, I think we can focus on three basic issues that sort of subsumes most of them. Those are the jurisdictional issue, the improper award of what we believe, the improper award of damages, and the improper award of double recovery. The underlying facts about the railroad are, frankly, fairly straightforward and not in dispute. My client owns a short line railroad in the lower part of South Carolina and in North Carolina. In 2010 and 2011, the administration changed some of the rules and regulations relating to the operation of railroads, and upon inspection of the new rules, my client was found to be in noncompliance in the spring of 2011. He undertook repairs, a re-inspection was made and found that there were some additional problems and he was not in compliance and was told that there would be an application for emergency order to stop further shipments of the railroad. My client considered that and entered into a voluntary bargain. But not before accepting the 31 railcars of FLE. Why would it have accepted those railcars knowing the bridges were in disrepair? I think there could be a couple of reasons, Your Honor. I don't think anyone anticipated that something could not have been worked out to get the cars back on there. As you'll notice in the record, there were repeated attempts to get a waiver, not only by us, but by Norfolk Southern, after March of 2012 when it was realized we couldn't get any variance of that to get the cars back. It wasn't an intentional act to strand the cars, it was more of a practical business decision to let the cars go through, rather than have an order issued, allow an embargo and hope to work something out, which I think the common sense approach was, and that didn't turn out to be. And so we end up with a situation where the cars are stranded through an inspection by the government and my client doesn't have the financial means to make the repairs. So the question is, what do we do? Norfolk Southern was advised of these facts in late February of 2012. As you recall from the record, undertook to get an estimate themselves to move the cars by truck, lift them off the track and move them by truck of roughly $5,500. They chose not to do that, but instead they went through a process of trying to get some... You say they chose not to do that. Wouldn't that be the responsibility of BNA? I think there's... if BNA had the means to do so. Well, I understand, but I mean, the cars were constructively in possession of BNA under the lease arrangement and they were required to return them to some exchange point. So it seems to me Norfolk was probably exploring the possibility, but it surely would not have done that on its own account. I would submit, Your Honor, that under the ability to... reason was to mitigate their own damages, they become aware of what we would say an impossibility of returning them, that they would undertake their own steps to minimize the risk of exposure if they need the cars. Well, when appellant took the cars, appellant knew two things. They weren't going to be able to... the cars were going to be stranded, number one. And number two, that they did not have the financial means to return them. So why... Again, Your Honor, I would suggest to you that during this six-month window from the late August until February, that there were discussions back and forth and whether they had the ability to fix the bridges may not have been the issue. The issue is could they have gotten a waiver, could they have gotten some special dispensation to get the cars back on the rail. There were various discussions and Norfolk Southern undertook the same discussions and came to the same conclusion in August of 2012. So I would submit that it would be a question of fact for a jury to determine whether the actions of either party were reasonable at the time. So when appellant took the... accepted the rail cars, at that point in August of 2011, did Norfolk Southern... did your client advise Norfolk Southern that they weren't going to be able to carry them over the bridges? There's nothing in the record that would show that, Your Honor. I can't say what... there's nothing in the record to show that. Okay. As we move forward, again, in March when Norfolk Southern was aware, they looked into moving the cars, certainly had the ability to do so. I'm troubled by your effort to push responsibility onto Norfolk Southern in a circumstance where, in traditional bail-in law, so to speak, you rent a Hertz car and it gets impounded because you parked it in the wrong spot. Now you're going to tell Hertz, because you didn't have the money to bail it out, Hertz, you go bail it out and mitigate the damage. It seems to me Hertz doesn't have to do anything. You have to return the car and bear responsibility. It's not something where Hertz is running up the bill. It's the fact that you parked in the wrong spot, the car has been impounded, and you tell Hertz. So Hertz calls up and said, how much is it to get it out of the impoundment? And it says it's $123. And you say, I don't have $123. Well, Hertz doesn't have to do that, do they? I think they do, Your Honor. And for this reason, we're not trying to shirk responsibility. Never have been. Well, it sounds like it. That's what I'm uncertain about. And I'll see if I can push this off on the other side. If, going to your Hertz example, if they, for example, need that car and have financial means to pay the $125 under your example and get the car out so that they can continue using it, my client's responsible for the $125. We have never shirked our responsibility to say that we don't owe something to them. We've never contested some of the initial rail car costs here. We haven't shirked that responsibility. What happened here, though, Your Honor, is, going to your Hertz example, if they say, all right, you can't pay it. Well, you're going to pay for the car, okay? We'll pay for the car if that's the ruling. And you get prejudgment interest under the law for that. And the Hertz would be made whole. What the court has done here is they- As I understand the award ultimately, there was an award for $103,000. Then there was an award for the higher amount from that $103,000 up to the time of the judgment. And then as of January, there was a purchase amount. And the judgment, the pretrial interest was imposed only on the unpaid higher rent. And there's nothing duplicative in that. At some point, the rental ends, and the court says, now you're forced to pay the purchase price. And I would agree with you, except to this point, Your Honor, is once you award prejudgment interest, whether it's on the car hire or the value of the good, because the value of the good is not as of the time the amount was paid. The value goes back to 2011. Well, that's the value. of the purchase. The purchase, effective purchase was January 2016. And the hire was from 2011 to 2016. And that's where the prejudgment interest was awarded, on the unpaid higher amount, rental payments. That's correct. And if that was- And then at the end of that rental payments, there still was no return. The court effected a sale as of January 2016. It used the 2011 valuation, but there was no other valuation. And you can challenge that, but there's nothing in the record to suggest that valuation didn't remain constant. Well, there is. There's nothing in the record to show that was a valid valuation. There's no sworn testimony. There's no proof. In fact, the plaintiff's attorney submitted a letter to the courts, which is part of this record, saying it is a guesstimate. We don't want to be bound by it. In the hearing in August of 2016, when they were talking about marshaling some of the sale assets under an injunction, it was admitted then that if they wanted to get the fair market pay of 2011, that they would have to have expert testimony and submit additional paperwork. If you go back to June of 2015, in the brief we submitted, we again said that the value of the cars is such that it doesn't make any sense to try to transfer the cars. We're just bound. We're waiting for value. And the burden was on Norfolk Southern under the court's order to give us their evaluation. We would respond to that. We never got that opportunity. Explain to me what was the basis for the $582,000 number. I would submit there is no basis in the record for it. There is a number in there. There's a document in there. I'm just wondering which part. There's a document that counsel submitted, which he said was a guesstimate. It was not there. How did it get in? Whose work was that? I have no idea. He represented the letter of someone from Norfolk Southern. We don't know who it was. We don't know what they based it on. He admits it's a guesstimate. It was never submitted as part of the official record. We didn't even know it. When I got involved, we didn't even know it existed until we got a supplemental, got some e-mails. We didn't know it existed. Got it from a client. The point being is there was never a hearing to make the determination. I go back, Your Honor. If the court had awarded the value of the cars, December 31st, 20- Was there a hearing creating the escrow? There was. That was when the court made the components of the escrow. One of the components was the value of the cars. She did, Your Honor. I'll be happy to read the letter which the attorney submitted. I'm just having difficulty. Your statements are over generous. In other words, you said you didn't know anything about it, but yet you had a hearing on the escrow which talked about the valuation of the cars. Now, were you just not listening or what was the problem? Your Honor, we're talking about evidence. No, I was talking about I'm challenging you're saying we didn't know anything about it until the supplemental thing we got something from our clients. I'm suggesting to you that this was a broad area of discussion with the court when it established the escrow. Let me correct. I didn't get involved in the case in public. I personally got involved in the case late in 2015. Then just be cautious with your statements. Yes, sir. The way we carry on a dialogue is if we have an understanding of what the record shows. Yes, I apologize for the confusion. When I was trying to make a record appeal, I got it from the court. It was not in the official record. I ended up having to get it from co-counsel. I'm not suggesting that the document wasn't submitted. What I'm suggesting to you is— This document is simply a piece of paper. There's no affidavit. Is that correct? I missed the first part. Was there an affidavit connected with the piece of paper that has this valuation on it that you're talking about? No, Your Honor. It was not. Did any witness testify about it under oath? No, Your Honor. Isn't that your point? You didn't know about it? Exactly. I apologize for the mistake. You take this case. It's your case now, right? Absolutely my case now. I have 15 seconds. With regard to the point about the award, again, there was no sworn testimony of receiving that. We thought we were going to have a hearing if you read the record. With regard to the award, if the award had been made as up to the value at December 31, 2015, or January 2016 when the order was issued, it would be a different story. But the fact that you reached back to the value at the time of the transfer, that's the full value. So I would submit that by giving riddle and the full value, the appropriate award would be the full value and prejudgment interest on that value to avoid a double feather. Thank you. Thank you. All right. Mr. Merrick? Good morning, Your Honors. May it please the Court, my name is Chris Merrick, and I represent the Appellee Norfolk Southern Railway Company. We believe that the judgment of the district court should be upheld because Carolina Southern, Baltimore, and Annapolis should not be allowed to shift upon Norfolk Southern the consequences of its own decision to take custody of Norfolk Southern's rail cars. Could you address briefly while it's still on the table the evaluation, where the evaluation came from, and how the Court got to using it? Sure. So Mr. Merrick is correct. He wasn't involved in this case since the outset, so he may not be aware that this value was provided even at the beginning with our initial disclosures. It can be determined from the record if you look at JA 109 and 110, we deposed B&A's corporate representative about those depreciated values, asking him if he had any objection to them at that point. And I think it's also important to note. What did he say? I apologize. What did he say? We asked him if he had any objection to the depreciated values. He said he was aware of the values. He said he wasn't sure whether those were the right ones or not. But there was never any argument that, oh, these aren't a value at all, or they aren't evidence at all. So this isn't something that came in at the 11th hour without anyone knowing about it. And I think it's important to note here, too, that while B&A is correct, that they did claim that they'd like to have the right generally to contest the measure of damages, there was never an argument that this isn't a measure of damages at all, which is what they're arguing here. Well, sure it is. It was the basis for the courts giving you value as of the sale effective January 2016. That's exactly correct, Your Honor. Well, then that's a damage number, wasn't it? Correct. Maybe I misspoke. My argument was that, of course, it is a measure of damages, and therefore the new argument — What you're saying, how did it get into the record? Is there evidence of it? Your argument is there's no evidence of value from B&A's point of view because they came up with a number of 400,000 out of the air. But now they come and say, well, you don't have any basis for the value either. And that's my first question to you. What is your basis for the value? Well, under the Association of American Railroads, there are certain valuations that are created for industry-wide use. So, for example, in this case, if Baltimore and Annapolis were to take possession of the cars, as you can see under Rule 7 of the car hire rules, if those cars were destroyed, they would have an obligation to pay Norfolk Southern for those cars. And an accepted industry value is the AAR car hire rules, which is a measure of depreciation. Is the value set forth in those rules? It sure is. And a summary of those rules was provided at the outset of this case. Well, the rules are there. I think nobody is disputing the AAR rules. And to be clear, Your Honor, there are different – the rail industry has a wide set of rules. It's not just the car hire rules. Now, of course, the car hire rules provide that you're to pay under what's called the DDCTS system, which does track industry-wide. There's an AAR field manual that provides values. We know all about it. I'd just like to get to the value. You say the value of these cars is provided in those rules. Correct. And where do I see that? So the actual value themselves does not appear in the rule. So where in the record did Norfolk Southern disclose to appellant your valuation? Where can we find that disclosure and what it's based on? Well, again, there's evidence that during the discovery process, this was provided in discovery, again, at JA 109 and 110. I looked at 109 and 110. That doesn't really say much of anything. That's just a question in deposition. Is there not a piece of paper, a letter, a document in discovery where your client valued the damages? Other than we've got to read these car hire rules? Well, this is how we did value the damages. We looked to see, well, what are the different available options? And that's why in the letter we said this is a measure of damages, of course. Okay, what letter? Maybe that's – where is the letter? I apologize. So this was already produced in discovery, already discussed in deposition. Where? We need to see it, and we haven't. You know, I'm looking here at that testimony, and the witness, Mr. Pippin, says he thought the actual salvage of valuable cars like these were about $1,000. He did make that statement. Again, it's not supported by any evidence. No, no. I want to see – I want you to get to the direct question. Tell me, did the car rules provide a value, a salvage value for these cars? The AAR rules do. It's from the field manuals. You said at the end, you said it doesn't have those numbers in there. Correct. The car hire rules do not. And I think it's a little confusing. Do you understand how nonsensical you're saying it's in the car rules, but then you say the numbers are not in the car rules? Sure. Let me clarify what I was trying to say. It's in the car hire rules. The measure of damage is if cars are lost or destroyed. Well, fair enough. Everybody knows the measure of damage is the fair market value at the time. The question is, where did you get the fair market value of the cars? Correct. So it's not just an esoteric fair market value. It's actually specific. Where did you get it? That's the question. Sure. So the car hire rules specify that you use the DDCTS system in order to be able to set the value for loss or destroy a car. The DDCTS system is populated by the information in the field manual of AAR rules. So what I'm saying is that the field manual is not an evidence because – I don't want to know whether it's an evidence. I want to know where you got those numbers. The field manual of the AAR rules, Your Honor. And does it provide those numbers? It does, Your Honor. It's an industry standard number, and that's why we used it, is because at the time of the preliminary injunction hearing, this was the only value that anyone had that we believed to be industry-wide. I just want to know the source of the rules. You say the DDCTS has the actual numbers used? The DDCTS uses the AAR field manual, and the AAR field manual is – Do you understand how you're not answering the question? You said in the manual it doesn't have the numbers. The rules don't have the numbers. I want to know where the actual number for each car was obtained. If I said the manual doesn't have the numbers, I misspoke. The AAR car hire rules do not have the numbers. The field manual does. So the AAR car hire rules – John Barger. Correct. Mr. Barger – so after the summary judgment was awarded for Norfolk Southern, the court gave three different options to B&A because – Is he the one that came up with the numbers? He provided the values. I'm looking at JA339 to 341. He's providing – You are providing an estimate to appellant of the numbers based on Mr. Barger, whatever his name is. So is that – is he an expert? He was to be presented as an expert if this matter proceeded to trial, Your Honor. The judgment was entered, as the court is aware, just before trial was to begin, and he was present in the courtroom and available to testify, just as Norfolk Southern had witnesses available to testify as to exactly – Could we stick with where the numbers came from and where I can see them? In other words, the district court awarded your numbers, and I want to know where those numbers appeared. There is a list given. Who gave that list and under what circumstances? Norfolk Southern created the list. Created the list, and what did they do? Did they submit it to the court? First we produced it in discovery, and then during the conference the court requested that we provide this value because it was agreed amongst counsel that this was the fairest measured fair market value that could be determined for purposes of prejudgment. Where is that agreement? I apologize, Your Honor, I didn't hear your question. Where is that agreement? It would be within the transcript of the oral argument on the preliminary injunction, Your Honor. There were two days to be able to determine what the value would be, and this was the fairest value that could be determined in that amount of time. Do you want us to look through the entire transcript? You don't know where? You can't tell us where in the transcript? I would have it in the briefing, Your Honor. If you would like me to pull it up, I'd be happy to pull it. It's fairly important, isn't it? I mean, this is the biggest challenge he's made. He's basically said that number has no basis, and you've argued his number has no basis. He pulled it out of air. It's a $400,000 number, and my question to you is how did you establish $582,000? And you're saying it was on that list. Now I'm saying what supports that list? You say it was provided in discovery. Under oath? It was provided under discovery. Of course, discovery is not provided under oath, Your Honor. However, interrogatories are provided under oath. Why isn't it? Hold it. Just stick with me. Why wasn't the discovery under oath? Of course, the signing of the response to the request for production would be under oath, of course. However, the production of the document that we produced, I don't think it's under oath. However, it's certain that we have no questions. The response to an interrogatory? It would have been produced, first of all, with the initial disclosures. As the Court's aware, under Rule 26, there's an obligation to produce the measure of damages, which we did, because this would be the measure of damages that we set forth. Okay. You said they agreed to that value. I'm interested in that, where you say that occurred. Sure. May I be permitted to grab a copy of my brief? Well, let me ask you this. What did the district court say about that value, the source of that value? The district court used it. And I think if you look at the supplemental appendix. My question was, what did the district court say about that value? That that was the reasonable market value of the railcars based on the AAR depreciated values. And some citations that front. We would direct the court to JA 440 at note 5. And also supplemental appendix 6 and 7. I would still be interested in where the parties agreed to this value. Sure. So under supplemental appendix 6 and 7, there was a statement by counsel in supplemental appendix 7 that they don't dispute the valuation for purposes of the preliminary injunction. And then that was the letter. But that's a little different because a lot of times you accept something for preliminary injunction purposes that you won't accept with a final judgment, right? That's true, Your Honor. And I think that goes to the heart of the argument here is they're saying we would have produced other evidence. We would have come forward with other evidence. And the question is, this is the only evidence that was in the record. It was the evidence in the record. That's what we're trying to understand. If it's just a document that you've talked about, did you have some witness make an affidavit and hand it to the court? Was it produced as part of some discovery thing that was under oath? Of course, Your Honor. And that's what we're trying to achieve. I apologize. And, of course, the signing. Or did the other side agree to it? Any of those? Sure. Of course, the signing. And you say it's been agreed to, but maybe you could read me the language where they say they agreed to that. Sure. Is it on Essay 7? Essay 7. Go ahead. Okay. I also point out Essay 56. Judge Motz wanted you to read to her the language where they agreed to it, which on Essay 7 in a letter from an appellant's lawyer, it says, defendant has no objection to the fair market value of the rail cars presented by the plaintiff, which is your client, in the proposed order for escrow purposes only. Further, we would have no objection to that amount. And it says $582,000 together with the previous judgment. So it's on Essay 7. That letter is what you're basing your argument on, that they agreed. That's correct. For escrow purposes only. I'm sorry, Your Honor. I didn't hear the question. For escrow purposes only. That's what the colleague just read to you. Correct. Of course, and the case didn't end at that point. So if we go to the contempt proceedings at Essay 56, we have a counsel states, I don't know the number they've got is wrong. I really don't know that. We tried to see what it was, to see what we could tell them for it, to find out what they were worth, you know, what the actual fair market value of the cars are. It may be that I can't dispute the estimate because I could not find, we could not find a person that would go back and tell us what they were like in 2011. So this wasn't a case of gotcha. This was something that they knew there was a need. No, I don't think it's a case of gotcha either. But that's not really the issue here. They clearly didn't come up with a value, but they're not claiming they did. They're claiming that you didn't establish your value. Now, if there was an acknowledgment by them, I still haven't quite heard it, I don't think, that that was an appropriate value, then it doesn't seem to me you would have time to do anything more. But I don't hear that. I just hear a lot of sloppy talk. And I apologize for that, Your Honor. Well, I mean, you know, litigation is litigation. Well, maybe your argument is, and I don't know, I don't want you just to jump on it, but maybe your argument is that they agreed on that value for escrow purposes, and then when they were in violation of the order and they were found in contempt, that that was an appropriate order to use for the sale of the cars because it was agreed for that purpose, escrow purposes, which was later released under the contempt process. And maybe it gets its justification under the contempt process rather than from an independent evaluation. I think that's accurate, Your Honor. Well, it is accurate. The question is, is that your position? It is. I believe that's the Court's position, too. At JA 440 at Note 5, I think that's exactly the position the Court took. Because, again, while there is no— JA what? 440 at Note 5. Because, again, there was never an argument that these aren't authentic documents. That misses the point. The point is you have an affirmative duty to establish that. Of course, Your Honor. It's not—if they agreed to it, that's one thing. And maybe derivatively they agreed to it by agreeing to the component of the escrow and then by causing the release of the escrow of that component for failing to obey the court order. That's correct. And, Your Honor, when there was a motion for the contempt, it's also important to point out that we sought exactly this value of the cars using these values. And there was no competing evidence. There was no challenge. In fact, the appellant says they—and said to the court they can't come up with a value on their own. If they say it's beyond their ability to do so. And at SA 56, they said to the court, then the value of those cars is whatever the court rules it is. That's correct, Your Honor. The district court said the value is derived by the industry standard depreciated value set forth by the Association of American Railroads. Is that accurate? That's accurate, Your Honor. And tell me which particular document of the Association of American Railroads it's included in. The field manual, Your Honor. And the field manual is in the record? It is not, Your Honor. So how do I get a hold of the field record? Well, it's available through the AAR, Your Honor. However, these values were provided by Norfolk Southern. I guess I better move on. I think I've said everything I can say on that point, other than that this was an industry standard value that was accepted by the court. All right. Move on to whatever else you need. Okay. With respect to the—just briefly to the other points that were made by the appellant regarding damages, I see we didn't get to jurisdiction if the court would like to discuss that. I'm prepared to do so. But the argument—there was a question from Judge Niemeyer about the reasonableness of— if Hertz were to have a car impounded and the charge were to be $125, would it be reasonable for Hertz to go and get that car at the expense of $125? I think the court's correct that there is no— That wasn't my question. My question is did they have a responsibility for doing so? Correct. And I think that the law is clear, as you cited in our brief, that they do not. However, it's also important to notice that there's a reasonableness standard here, too. And as Judge Thacker cited, the only evidence in the record of the cost of returning these railcars, including all the things that would be required, and I can list them all if the court would like, is somewhere between $800,000 and $1.5 million for railcars that were worth $500,000. So you have to be able to achieve the mitigation without substantial expense or unreasonable exertion. And I think in the context of Hertz potentially going to get a car for $125, when that car is worth tens of thousands, maybe that's a different situation. But in this case, the cost of retrieval is far in excess of the cost of the car, and the purpose of retrieval would be to save them from paying car hire. I don't believe there's any obligation under the law to have to do that. And this isn't a double recovery, of course, because there's not— They're two separate obligations under the car hire rules, and therefore the fact that they've already paid for the value of the cars is not coextensive. It's not the same harm as actually failing to return the cars that they had an obligation to return. So with respect to—just briefly, one other point I wanted to mention with respect to the value. Can I just ask you about that last point? I thought the valuation was as of 2011, and the sale took place in what time? 2016, Your Honor. So if you use the Hertz example, if we had a regular car, it depreciates in the five years, right? That's correct, Your Honor. The for-sale value of it would have decreased, but you used the old value of it. Correct. Can I see my time? It's about to expire. You can help me with that. Sure. So if you look at the SA6, which has the values of the real cars based on the AAR, the depreciated value, it's based on a salvage value. In other words, it is based on salvage plus 20%. And what that means is these cars are metal. They're made out of metal. They have lots of metal. And as a result, the primary value of the cars at this age is the value of the metal. So as the Court is aware, commodities prices fluctuate. There's not a straight-line depreciation like you would have with an automobile. And therefore— So if the price of metal went up, the action could be higher as of 2016? Exactly right, Your Honor. So you're saying the AAR rules account for any depreciation? That's correct. And it accounted for any depreciation? Exactly. That's why they would be called the depreciated values under the AAR rules. Okay. Because it says at JA414 in the Court's order that that amount was developed using the industry standard depreciated values established by the AAR. That is correct. But it was the depreciated value then as of 2016? Is that what you're saying to me? I'm sorry. I didn't hear your question. It's the depreciated value as of 2016 that they used? Well, the depreciated value that was used was the one from 2011, Your Honor, because that was the— But I still don't understand how that was the correct value for the depreciated value as of 2016. Because that's when the sale took place, right? Well, that was when the sale took place, but the actual conversion of the rail cars took place in 2011. That's when they took possession. Well, now if you make that argument, then you can't get rent. If it's converted as of 2011 and they have title, then you're going to pay as of that time and you're not going to get rent. If you're going to get rent, you have to get the value of the cars at 2016. Now, the argument I hear you making is that the only value in the record is the 582. And then the argument is, well, is that number good enough when you have the sale four and a half years later in January of 2016 or five years later, whatever, 2016? And your answer, I heard you say, is that, well, it doesn't necessarily depreciate anymore. It's not obviously a wrong number because the value is based on salvage plus 20%. That's correct, Your Honor. But it's still not a very good number because of the four and a half year differential, or it may not be. The question is, your opponent hasn't challenged that number on that basis, at least with any other countering evidence. It's a sloppy record, isn't it? I mean, shouldn't there have been a statement of the salvage value plus 20% as of January 2016? Well, under the law of conversion, to the extent, just to, let me just finish out what I was trying to say, you're entitled to the highest market value of the cars up until the time of judgment. So here, this is... I understand, but do you understand the problem with your argument? I mean, you've got, you're going to give up $500,000 in a minute. I mean, it seems to me, if you're arguing that it was converted in August of 2016, of 2011, when that value was determined, then you can't collect rent after that. Of course. And to be clear, what I'm saying here, too, is there was no way to know that they were converted at that time. They don't even argue 2011. It's not a question of knowledge. It's a question of what is your theory. If you're getting rent from 2011 to 2016, it's got to be their property under the bailment. I mean, they've leased that. They're being charged rental. That's correct, Your Honor. It can't be a conversion. They were legitimately in possession. The question is, as of 2016, they were forced to purchase. Now, when I ask you about the value, because it's a 2011 value, you say, well, I don't understand the law of conversion because they converted as of 2011. So if that's so, you're stuck with 2011 sale. We knock off the rental from that point on, which is, what, $545,000? And if that's the – I misspoke, Your Honor. I thought you might have. I did, Your Honor. And to be clear here, I think what we're saying is there was a summary judgment ruling where they were given three different options as to how to be able to return these cars. They initially selected return of the cars. When they determined it would be too expensive to do that, they were ordered by a court order to buy them. It was at that point, when they actually paid for the cars, that it became their cars and car hiring was stopped. And we're stuck then with a value as of January 2016, which is determined as of August 2011. Now, we don't know whether that value is imperfect or not. We do not. But it smells because there's a differential in time. Correct. But there's no other evidence in the record of any other value. You've sort of skipped over whether this value is in the record. It's in the chatter. It's in the papers. You do understand the difference between the record, like, for purposes of summary judgment. You know, you put F. Davidson in the record. You put other pieces of evidence that show that there's no dispute as to material fact. I understand, Your Honor. And that we don't have this value. As I understand it, please correct me if I'm wrong, there's nothing that puts this value in that category. Is that correct? I would submit that's incorrect, Your Honor. Okay. And that's great. That's what I would like. Give me the record reference of something that made this a piece of evidence for purposes of the summary judgment record. For purposes of which summary judgment ruling, Your Honor? The first ruling or the second? Any. Sure. So we would cite to JA-592. Okay. And what is it? That would also be a reference to the depreciated values from the record. What do you mean it's a reference to it? Is it a piece of paper? Is it an evaluation? Is it an affidavit? What is it? It's a motion, Your Honor. Undoubtedly, you talked about it. There's no doubt about that. Sure. There's a motion. We have SA-7. It's an argument of a motion, it looks like. JA-592. It's not the actual motion. It's an argument. It's from defense counsel, Your Honor. As well as SA-7, there was a statement that there's no dispute as to the value, at least for escrow purposes, or no dispute that it's not an actual A or value. That may be your best hook because summary judgment is supposed to be based on evidence admissible at trial. That's correct. As you know, that's in the rule. And if somebody just throws something in, you don't consider it. And if the court considered it, it might have erred, unless there's some other aspect. Now, your argument might be that this was created in an escrow from the American, agreed that it came from the American Railroad's data, and that it was accepted without objection as part of the escrow component, which constituted the value for purposes of the escrow of 582,000. Then the question is that value, which was agreed to as part of the escrow, becomes the object of the court's award based on civil contempt, but not as a damage element. That's correct. I believe that's consistent with what we argued in our briefs as well. If I might just clarify, just one point to Judge Motz's question. The initial summary judgment motion took place after there was a statement by Carolina Southern that it wished to raise a mitigation defense that wasn't pled. It wasn't something that was discussed. It was something that they sought to raise that wasn't pled. So in the course of that deposition of their corporate representative, he said, we think we can return these for substantially less than what these are worth. So what the court did, and we advocated, we said, sure, if you can get these back for less than they're worth, do that. But the other option would be, if you can't do that, you could buy the cars. And that gave all the parties the option to submit additional evidence later in the event that there was a valuation of the cars that should be used for purposes of a car purchase. The evidence that was submitted in connection with first the preliminary injunction and then with the contempt proceedings were these AAR rules. They're the only valuation in the record, and we believe that under the circumstances they are an appropriate value to use. They had plenty of other opportunities, and they cite them in their brief, provide any other value, and no such value was provided. Did you answer interrogatories about your values? I believe so, Your Honor. Indeed. Of course, it's a component of our case. We answered interrogatories. My question is, did you answer interrogatories relating to your damages? Of course, Your Honor. And those were signed, verified by the client under oath. And those damages were provided in what form? Exactly in the spreadsheet, Your Honor. And that was attached to the answers to interrogatories which were submitted under oath? Along with the other documents that were produced as part of requests for production documents. And where is that? Where are those answers? I don't believe that the interrogatory answers were placed into the record. Well, they're in the record. They're not in the JA. Don't you submit them to the court? Did you submit them to the court? I do not believe the interrogatory answers were submitted to the court in this case. Okay. All right. I think we've lost counsel on that one. All right. We'll hear from you, Mr. Britton, I guess. Yes, sir. Good morning. May it please the court. I've just got to say what an honor it is to appear before this court. I don't get to do it much. I've been practicing for 39 years. I think this is my third time. What a majestic place is this. I believe the court is centered on the exact issue for determination. And I believe all the exhibits that have been discussed and the chatter that has been discussed will get you. Yes, sir. Let me ask you. Yes, sir. He asserts that the salvage value is provided in the manual established by the American Association of Railroads, a plus 20 percent, which is established under the rules, and that that was the basis for the escrow. Do you dispute any of that? I do not dispute that when the escrow preliminary injunction hearing was taking place, we agreed and made it as clear as we could for escrow purposes only. I understand that. We would accept that figure. But, Your Honor, that would be like saying we're going to let— the American Association of Railroads listing the salvage value. Never saw it. Never saw the document. I haven't seen it. Have you seen it since? I have not. It may be there somewhere. I have not seen the document. But our point was we knew the car was worth probably about $400,000. And we're talking about here now fair market value. No, they're talking about salvage value. That's right. There's no proof of that. I would expect it like any other case. If it was doctors and you had an emergency— Just follow me here. If that number was established as an industry number, part of the manual is part of the rules, and that is represented and accepted as part of the industry salvage standard, it seems to me then that both of you have participated and agreed to that in participating in the—this whole contractual arrangement is based on the American Association rules, railroads rules. And the question is if that is provided in that way and there was no objection to it for purpose of the escrow, then the next step is when you didn't respond to the court's orders and the court held you in civil contempt, the court then took that number as the basis for its judgment. Now, what's wrong with that process? Well, that might be what you might would have done. That's not what she did. She did not do that, Your Honor. There's nothing in that order. You are taking your brilliant mind and putting her as to what should have been done. What happened here was fair market value wasn't an issue in this case. This was a case for car hire. All of a sudden—let me just finish, please. The plaintiff decided they wanted— You need to answer the questions of the court. Well, I'm trying to answer it. What I'm saying is she didn't do that. She should not have done that. That's not what—the reason she changed was we originally were going to move the cars. As you can tell from reading the record, we're about to sail the railroad in here, and they have run us down to where we're getting ready to get very little for it. So we all of a sudden have an opportunity to buy the cars. Now, rather than spend a million dollars to move them and give them back to Norfolk Southern, why don't we spend $400,000 and at least have the cars? That all of a sudden became available to us. Now, it was lost on the court that that was a legitimate change in business and economic circumstances. And so since it had delayed it further, she came up with her order for contempt because essentially we had changed what we were going to do. We had all been functioning on moving the car. We couldn't get them to agree with us. We had an old farmer-type guy that was going to move them. They wanted some fancy company that was going to charge three or four times as much. But you're on. You asked the question that is the bad result below is this. This case has been decided on the basis of common law conversion as of August 26, 2011. Why would you use it? Where did you get that? That's in her order. That's in her order as to when. Give me a reference. That would be February 15. I need a reference. Sir? I need to look at what you're saying. I did not see that the conversion was determined as of 2011. Well, let me say the valuation. That's the valuation we're using. I understand that. That's the whole issue. The conversion was established as of 2016. That's a purchase. We purchased in 2016. There's no reason to use 2011 as a value unless you're deciding that that's when the transfer occurred. Why would you use the 2011 number if the transfer occurs in 2016? You would only use 2016 as your number. If you go back to 2011 for your number, you're having to have a meaningful issue event in 2011. Now, here's why there was no proof of the issue. You can't, five years later, go back and have an appraiser give you a number on the value of rail cars four years ago. So, we were incapable. Well, it depends what the value is based on. If it's based on salvage value, it may be very constant. Yeah, but it could be. We're not talking about salvage value. That's what they said. I have a question. This letter on August 13, 2015, at SA-10 to SA-12, which is from Norfolk Southern to the court, laying out how they established that 582,000 number based on the AAR rules on which you're copying, did you object to that? I did not object to it for purposes of protecting Norfolk Southern out of the proceeds of the sale. I expected to have a damages hearing where reasonableness, mitigation, proof of value would be heard. That's what I expected to have. In South Carolina, when there are issues of fact to be determined by a jury, we let them make that determination. What happened between August 13, 2015, and the date of the court's final order? What happened? Yeah, I mean, the Norfolk Southern… We showed up for trial, and we didn't have one. We showed up for trial, and the case was she ruled that none of the evidence was admissible. There was nothing to be heard, and she had made the ruling she made, and it was over. The plaintiff wanted everything. They wanted the value of the cars back on 2011. This is not a double recovery case. Triple recovery, Judge. You're just misstating the record, and you're misstating the facts. No, that's right. The facts is as of 2011, the value was created for purposes of creating an escrow. That's what it was done in 2011, and they used the values from the AAR manual, salvage value. You did not object to those values for purposes of the escrow. That's right. The court determined that the conversion, the sale of the vehicles was in January 2016. Before then, it awarded rent, and it said basically it's in your possession, and you have to pay rent. As of January 16, they're no longer in your possession. You have been forced to purchase them for the escrow amount, and that's what the court held. There's none of this that the court found a conversion in 2011. That's what I wanted you to demonstrate. If you make that statement, you've got to have something to support it. Let me make it this way, and I want to be as respectful as possible to you. We're just having a disagreement here. Okay, let's stick with that. Okay. I want to see where the court said that the cars were converted as of 2011. Well, I cannot show you that in writing. Can I go one step further and tell you why I believe that's the case? Well, it's not in writing. The court didn't find it. Well, it's in the orders. Here's my point to you. Why are we even talking about a 2011 value? To create an escrow to protect Norfolk in the case that it had to be awarded. In other words, the issues had not been resolved. The court awarded rental up until that point, $103,000, and then said the rental thereafter will depend on a lot of things. But they created an escrow because you were being sold to a Mormon or whatever it was, and the change of how that was handled was based on the civil contempt. And then without any further hearings, those numbers became the judgment of the court. So to take your argument to its conclusion. I'm not arguing. I'm looking at the record. We can't even agree on the facts of the record. You keep giving me statements about what the record shows, and it doesn't show that. If her contempt order intended that, it would say, and by the way, because of the way this has been handled, you don't even get a damages hearing. I'm going to take 582. It's going to be the number. You cannot challenge that number. You had opportunities to respond to the court in numerous ways and did none of them. The court warned you and you did none of them. The court then found you in civil contempt and released a portion of the escrow. Now that's where it turned out. And the court, in a footnote, concluded that that was the salvage value determined by the American Association of Railroads. And now if you had an objection to that, first of all, you should have responded and not been held in civil contempt. Please let me on that point. I would respectfully disagree with you in terms of what happened. We consistently adhered to what the court asked us to do as we possibly could. You must understand, my clients were in an unbelievably difficult situation through no fault of their own. And coming up with the money they wanted to come up with, doing the things they needed us to do were very difficult. But I was very responsive to Judge Hendricks. I've known her all my life. I believe that finding was one based on a change from spending a million dollars to accepting responsibility for $400,000. And it came at a bad time. I don't think it was appropriate. And if you would add your other punitive results to that citation, it would be extremely unfair to the litigant to not be able to challenge $582,000. As we normally do with a witness, with a reference to the rules, like a doctor says, the AMA guidelines say so and so. Who would dream of somebody sending a letter to the court and telling them what the AMA guidelines say? And that becomes a number of the damages. It wasn't damages. It wasn't damages. The court released the escrow for civil contempt. But it's it. And the damages and the component of 582 was agreed to for purposes of the escrow as an AAR number. I disagree with the court that the lower court decided to read her order for civil contempt. It does not say what you're saying. Judge, you've got me where I don't really know exactly where it was. We cited it in the joint appendix. We'll read it again. But here's my point on it. Here's my point on it. If that were the case, there would be a paragraph in there that says something like this. All we've got so far is this AAR rules. Nobody's testified. Do you know what? I'm so frustrated with the defendants that I'm not going to let them have a hearing on that question. They tried to reserve this agreement for escrow purposes only. But I am specifically ruling that based on their conduct, they get no damages here. That's not in there. Did you have a hearing on the civil contempt? No, sir. She just made a ruling. Did you get warnings from the court about urging you to respond to the choices the court gave you? Oh, well, she wanted us to. I mean, you make it sound as if you were lambasted from a blind side. She issued an order and gave you three choices and she gave you deadlines. We couldn't meet them. We could not commercially meet them. Yes, sir. Where did you respond? Well, it was just calling up and saying, good, I can't. I understand that. I'm just trying to give you a feel, though. I understand. Don't make a decision based on that. But I don't want you to think having practiced law for 39 years, I wasn't trying to do what that court was telling me to do. I was. Well, Wayne, you're right. She gave you three choices. Now, it came as a surprise to me when she issued that order because I thought the communication The way to respond to an order, if you can't comply with that order, is to say you can't comply. That's what I think happened in the preliminary injunction hearing where we talk about escrow and changing what we were going to do. But, listen, I've done the best I can with it. We've been both sides a little bit extra here. Thank you very much. And we'll reread the important parts of the record. What a privilege. Yes, sir. We'll adjourn court for the day and come back for counsel. This honorable court stands adjourned until 2 p.m. today. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Stephanie D. Thacker